**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| RODRICK L. MITCHELL, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 20-3083 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 13, 18, 19 |
| | : | | |
| MERRICK GARLAND, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

**Granting Plaintiff's Motion for Fed. R. Civ. P. 56(d) Relief and Granting in Part and Denying in Part Defendants' Motion to Dismiss or for Summary Judgment**

**I. INTRODUCTION**

Rodrick Mitchell alleges that a supervisor removed him from a desirable position at the Federal Bureau of Prisons based on his race. When Mitchell complained about the discriminatory environment he faced, another official allegedly retaliated against him by marking him absent from work. Defendants the Attorney General and the Bureau of Prisons respond to Mitchell's Title VII claims with evidence to suggest that Mitchell was reassigned not because of his race, but because of an ethical lapse. They also say that he was marked absent only because he failed to timely request leave, and they move for summary judgment. But because Mitchell has not yet had sufficient opportunity to obtain evidence of his own to counter this version of events, the Court grants his motion for relief under Federal Rule of Civil Procedure 56(d) and denies the summary judgment motion as premature. Defendants also move to dismiss for failure to state a claim, Fed. R. Civ. P. 12(b)(6), but based solely on the allegations in the complaint and reasonable inferences drawn in Mitchell's favor, Mitchell has plausibly alleged Title VII discrimination and retaliation claims. The Court denies Defendants' motion to dismiss, except

insofar as it relates to the Bureau of Prisons, which is not a proper defendant in a Title VII action.

## II. BACKGROUND

A little over a year before his retirement from a twenty-eight-year career with the Federal Bureau of Prisons ("BOP"), plaintiff Rodrick Mitchell found himself entangled in a discrimination dispute.  Compl. ¶ 7, ECF No. 2; Pl.'s Mem. Supp. Opp'n Defs.' Mot. Dismiss or for Summ. J. and Pl.'s Mot. Fed. R. Civ. P. 56(d) Relief at 6, ECF No. 18-1 ("Opp'n").  Eventually, Mitchell filed a Complaint in this Court, in which he alleged that he spent the bulk of his career, from 1992 to 2018, as a Telecommunications Specialist at the GS-13 level.  Compl. ¶ 7.  One of his duties in this position was to work as BOP's Contracting Officer Representative ("COR"), for BOP's Land Mobile Radio systems program, which involved procurement of communication devices for BOP facilities.  *Id.* ¶ 8.  Mitchell did not get along with his ultimate supervisor, Facilities Management Branch Chief Ponciano Rangel, III.  Rangel, a "Mexican-American," mistreated Mitchell, an "African American," in a variety of ways, including by telling Mitchell he did not trust him, speaking to him disrespectfully, denying him training opportunities, claiming that his reports were inaccurate, canceling his work travel plans on short notice, and belittling him in front of co-workers.  *Id.* ¶¶ 6, 9–10.  "[S]everal times" between 2014 and 2018, Rangel told Mitchell he wanted to remove him as the COR for Land Mobile Radio systems.  *Id.* ¶ 9.

Mitchell complained about Rangel's behavior to the BOP Ombudsman, but to no avail—the Ombudsman did not even speak with Rangel about the complaint.  *Id.* ¶ 11.  So, at some point "[p]rior to August of 2018," Mitchell told Rangel "that he intended to file an Equal Opportunity complaint against him."  *Id.* ¶ 12.  Things still did not improve for Mitchell, and in

fact, they got worse: On August 16, 2018, Mitchell found out that Rangel had arranged for him to be removed as the COR for the Land Mobile Radio account and replaced him with William Lee, a "Native American Male." *Id.* ¶¶ 13–14. Nobody explained why. *Id.* ¶ 14. And it was not as if others were facing similar reshuffling. Steven Tompkins, a "Caucasian Male" GS-13 Telecommunications Specialist who also worked under Rangel, never heard that Rangel wished him removed from his position and did not receive the same criticism or scrutiny that Mitchell did. *Id.* ¶ 15.

A few months passed before Mitchell's work-related troubles flared up again. Mitchell's immediate supervisor Seth Norman was furloughed during the January 2019 government shutdown, so Theresa Ideo, a "Caucasian Female," temporarily supervised Mitchell. *Id.* ¶ 16. On January 14, 2019, the BOP's offices were closed because of bad weather. *Id.* ¶ 17. That morning, Mitchell submitted a request to use "annual work leave" to take the day off; he did not work remotely that day. But Ideo denied the request and marked Mitchell as Absent Without Leave ("AWOL"), which meant that Mitchell did not receive pay for the eight-hour day. *Id.* Ideo then tried to mark Mitchell AWOL again, even though Mitchell had notified her in advance that he would be taking sick leave. *Id.* ¶ 19.

Mitchell unsuccessfully complained about these events before BOP's Equal Employment Opportunity Office and the Equal Employment Opportunity Commission. *Id.* ¶ 5. Then he sued the Attorney General[1] and the BOP itself in this Court. In Count I, he alleges that his supervisors' actions amounted to unlawful discrimination on account of his race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* *Id.* ¶¶ 20–28. In Count II,

---

[1] William Barr was the Attorney General at the time, but his successor Merrick Garland is automatically substituted for Barr as a defendant. Fed. R. Civ. P. 25(d).

Mitchell alleges that his removal as the COR for Land Mobile Radio, Ideo's marking him as AWOL, and Ideo's attempt to mark him AWOL a second time were all acts of retaliation for his various discrimination complaints, and therefore also violated Title VII. *Id.* ¶¶ 29–32. Mitchell seeks $250,000 in compensatory damages. *Id.* at 7.

Defendants Garland and the BOP (the "Defendants") responded with a motion to dismiss for failure to state a claim, or, in the alternative, for summary judgment in their favor. Defs.' Mot. Dismiss or for Summ. J., ECF No. 13. They attached documentary evidence in an effort to show that Mitchell's Complaint tells only half the story. *See* Defs.' Statement of Material Facts Not in Genuine Dispute, ECF No. 13-2 ("SUMF"). They claim that BOP removed Mitchell as the COR for Land Mobile Radio not because of his race, but rather because of an ethics violation. Mitchell was working on a solicitation of bids to replace the radios at a BOP detention Center in Puerto Rico, and Motorola was competing for the contract. *Id.* at 4. While in Puerto Rico for a site visit, Mitchell went out to dinner with Cindy Hare, a sales representative for Motorola, on August 13, 2018. *Id.* A Facebook post documenting this outing came to the attention of BOP authorities. Catherine Scott, the Chief of the BOP Acquisitions branch, determined that the dinner created "an appearance of impropriety and a possible violation of the Procurement Integrity Act." *Id.* (citation omitted). She informed Rangel and referred the incident to BOP's Office of Internal Affairs. *Id.* Thus, on August 15, Rangel directed Norman to remove Mitchell as the COR for Land Mobile Radio and to reassign him to be the COR for the Private Branch program. *Id.* at 4–5. According to Defendants, Norman was planning on reassigning Mitchell away from Land Mobile Radio anyway, because he wanted to "reorganiz[e] the work of each staff member." *Id.* at 5. The Internal Affairs Investigation determined that Michell had indeed violated BOP policy for procurement officials. *Id.*

4

Defendants claim to have an explanation for the AWOL determination too.  Mitchell, along with other staff, had been told at a May 2018 meeting, in a December 2018 email, and in a January 8, 2019 email that he had to request any unscheduled leave *before* the start of his scheduled shift.  *Id.* at 5–6.  During the shutdown, as the January email made clear, this meant that Mitchell was required to request any leave from Ideo in advance of his shift.  *Id.*  On January 14, the Office of Personnel Management notified employees who, like Mitchell, were eligible for telework that they would have to either telework or use leave while offices were closed due to inclement weather.  Mitchell did not telework on January 14, nor did he request leave in advance (or at all), so Ideo marked him AWOL.  *Id.* at 7.  The same, as it happened, was true of Tompkins.  *Id.*

Defendants are not the only ones who seek to rely on circumstances beyond those mentioned in the Complaint.  In his Statement of Disputed Facts filed in response to Defendants' motion to dismiss or for summary judgment, Mitchell for the first time notes that he filed a complaint in August 2018 about a sexual relationship between Rangel and Ideo.  Opp'n at 2.  According to Mitchell, this complaint, too, was a reason for his retaliatory removal as COR for Land Mobile Radio.  *Id.* at 15.  In addition to arguing that both Rule 12(b)(6) dismissal and summary judgment are inappropriate on the merits, Mitchell asserts that summary judgment is premature and requests the opportunity to engage in discovery pursuant to Federal Rule of Civil Procedure 56(d).  Opp'n at 1.[2]

---

[2] Mitchell failed to serve Defendants within ninety days of filing his Complaint, and the Court ordered him to show cause why the case should not be dismissed pursuant to Federal Rule of Civil Procedure 4(m) and Local Civil Rule 83.23 for failure to prosecute.  Order to Show Cause, ECF No. 5.  Mitchell then served Defendants and explained that the delay was the result of staff turnover at his counsel's firm.  Pl.'s Mot. Good Cause to Defer Entry of Dismissal, ECF No. 11.  Mitchell has been diligent in prosecuting his case since, and Defendants do not press an

## III.  LEGAL STANDARDS

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim" sufficient to give the defendant fair notice of the claim and the grounds upon which it rests.  Fed. R. Civ. P. 8(a)(2); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam).  A motion to dismiss under Federal Rule of Civil Procedure Rule 12(b)(6) "tests the legal sufficiency of a complaint" under that standard; it asks whether the plaintiff has properly stated a claim.  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This means that a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Twombly*, 550 U.S. at 555–56 (citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are therefore insufficient to withstand a motion to dismiss.  *Iqbal*, 556 U.S. at 678.  A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of legal conclusions that are couched as factual allegations, *see Twombly*, 550 U.S. at 555.  However, a court considering a motion to dismiss must accept the complaint's factual allegations as true and construe them liberally in the plaintiff's favor.  *See, e.g.*, *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000).  Put another way, the court must "draw all reasonable inferences" in favor of the plaintiff.  *DC2NY, Inc. v. Acad. Express, LLC*, 485 F. Supp. 3d 113, 118 (D.D.C. 2020).

---

untimely service argument.  Therefore, the Court will not dismiss the case for failure to prosecute.

Meanwhile, a party is entitled to summary judgment only when it can "show[] that there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that could affect the outcome of the litigation, and genuine disputes about material facts exist when the evidence would allow a reasonable jury to return a verdict for the nonmovant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A court assessing a summary judgment motion must avoid credibility determinations and draw all inferences in the nonmovant's favor.  *Id.* at 255.  But conclusory assertions without any evidentiary support do not establish a genuine issue for trial.  *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

Finally, a court may deny or defer consideration of a motion for summary judgment if the "nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition."  Fed R. Civ. P. 56(d).

## IV.  ANALYSIS

As the above recitation of the motion-to-dismiss and summary-judgment standards suggests, identification of the set of facts relevant to the Court's analysis depends on whether the Court treats Defendants' motion as a motion to dismiss or a motion for summary judgment.  As the Court will explain in Part IV.B, Mitchell has shown that he is entitled to take discovery under Federal Rule of Civil Procedure 56(d), so entertaining a motion for summary judgment would be premature at this stage.  The Court dismisses Defendants' motion for summary judgment without prejudice; defendant Garland may file a new summary judgment motion once the parties have engaged in discovery.  Therefore, the Court will address the merits only of the motion to dismiss, which means it will consider only the allegations in the complaint, will accept them as true, and

will construe them liberally in Mitchell's favor.[3] *See, e.g.*, *Robb v. Vilsack,* No. CV 20-0929, 2021 WL 3036796, at *1 n.2 (D.D.C. July 19, 2021).

At the outset, the Court grants Defendants' motion to dismiss insofar as it relates to the BOP.  For government employees, Title VII provides a cause of action only against the head of the relevant department—in this case, Attorney General Garland.  42 U.S.C. § 2000e-16(c); *Hackley v. Roudebush*, 520 F.2d 108, 115 n.17 (D.C. Cir. 1975); *Farrar v. Wilkie*, No. CV 18-1585, 2019 WL 3037869, at *2 (D.D.C. July 11, 2019).  Therefore, the BOP is not a proper defendant, and all claims against it must be dismissed.  However, Mitchell has sufficiently pleaded Title VII discrimination and retaliation claims against Garland.

## A. Mitchell's Complaint States Title VII Claims for Discrimination and Retaliation

Title VII provides that "all personnel actions affecting employees or applicants for employment" at federal agencies like the BOP "shall be made free from any discrimination based on race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-16(a).  Though the familiar Title VII provision prohibiting discrimination by private sector employers is worded somewhat differently, courts interpret the private and federal provisions in lockstep.  *See Brown v. Brody*, 199 F.3d 446, 453 (D.C. Cir. 1999) (explaining that the private-sector provision "makes it an unlawful employment practice to discriminate on the basis of 'race, color, religion, sex, or national origin' in hiring decisions, in compensation, terms and conditions of employment, and

---

[3] Defendants say that the Court may also consider formal documents filed during Mitchell's administrative proceedings in connection with the motion to dismiss, but the cases they provide involve the distinct context of a court considering such documents in order to determine whether a Title VII plaintiff has exhausted administrative remedies.  *See Vasser v. McDonald*, 228 F. Supp. 3d 1, 10 (D.D.C. 2016) (noting that courts should exercise an "'abundance of caution' before relying on materials outside the pleadings" (citation omitted)); *Ndondji v. InterPark Inc.*, 768 F. Supp. 2d 263, 277 (D.D.C. 2011).  Defendants do not raise an exhaustion argument.  Nor, in any event, do they point to any administrative documents in support of their motion-to-dismiss arguments.

in classifying employees in a way that would 'adversely affect' their status as employees")
(quoting 42 U.S.C. § 2000e-16(a)), *abrogated on other grounds by Burlington N. & Santa Fe Ry.
Co. v. White*, 548 U.S. 53, 67 (2006); *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007).  A
similar state of affairs pertains to Title VII's other central restriction on employer conduct, its
anti-retaliation provision.  *See* 42 U.S.C. § 2000e-3(a) (making it unlawful for any employer to
discriminate against an employee or applicant "because he has opposed any practice made an
unlawful employment practice by [Title VII], or because he has made a charge, testified,
assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title
VII]").  The D.C. Circuit has routinely applied Title VII's anti-retaliation rule to federal
employers, *see, e.g.*, *Cruz v. McAleenan*, 931 F.3d 1186, 1193–94 (D.C. Cir. 2019), and the
Supreme Court has "assume[d] without deciding that it is unlawful for a federal agency to
retaliate against a civil servant for complaining of discrimination," *Green v. Brennan*, 578 U.S.
547, 553 n.1 (2016).  Mitchell brings both discrimination and retaliation claims.  Compl. ¶¶ 20–
36.

### 1. Mitchell Plausibly Alleges Adverse Employment Actions

To state claims both of Title VII discrimination and Title VII retaliation, Mitchell must
plead that he suffered an adverse employment action.  *See Mulkerin v. Bunch*, No. 19-CV-03850,
2021 WL 3771806, at *2 (D.D.C. Aug. 25, 2021); *Laughlin v. Holder*, 923 F. Supp. 2d 204, 221
(D.D.C. 2013); *Craig v. District of Columbia*, 881 F. Supp. 2d 26, 34 (D.D.C. 2012).
Defendants argue that he has not done so.  Mem. Supp. Defs.' Mot. Dismiss or for Summ. J. at
14–15, ECF No. 13-1 ("Mem.").  For a discrimination claim, an adverse employment action is
one that is on the order of "a significant change in employment status, such as hiring, firing,
failing to promote, reassignment with significantly different responsibilities, or a decision

causing significant change in benefits." *Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009) (citation omitted and cleaned up). "[M]ere idiosyncracies of personal preference are not sufficient"; nor are "[p]urely subjective injuries, such as dissatisfaction with a reassignment, or public humiliation or loss of reputation." *Forkkio v. Powell*, 306 F.3d 1127, 1130–31 (D.C. Cir. 2002) (citations omitted and cleaned up). To qualify as an adverse employment action in the context of a discrimination claim, the action must impose "materially adverse consequences," or put differently, "objectively tangible harm."[4] *Id.* at 1131.

A broader set of employer actions can be sufficiently adverse to support a retaliation claim. A retaliation plaintiff "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 68 (citation omitted and cleaned up). With all reasonable inferences drawn in Mitchell's favor, the principal BOP actions his complaint challenges—removing him as the COR for the

---

[4] The *en banc* D.C. Circuit is currently reconsidering whether an unwanted job transfer must inflict "objectively tangible harm" in order to qualify as an adverse employment action. *See Williams v. Red Coats, Inc.*, No. 20-CV-00571, 2021 WL 4476770, at *9 n.15 (D.D.C. Sept. 30, 2021) (citing *Chambers v. District of Columbia*, No. 19-7098, 2021 WL 1784792, at *1 (D.C. Cir. May 5, 2021). Two members of the *Chambers* panel suggested that an unwanted transfer, or a denial of a desired transfer, must simply be related to the compensation, terms, conditions, or privileges of employment in order to ground a Title VII discrimination claim. *Chambers v. District of Columbia*, 988 F.3d 497, 504 (D.C. Cir. 2021) (Tatel, J., and Ginsburg, J., concurring). Defendants note this position and argue that Mitchell's removal as the COR for Land Mobile Radio was a "transfer of work responsibilities," rather than "a lateral transfer or another personnel action that placed [Mitchell] in another position." Mem. at 13 n.2. But Defendants do not cite any authority in support of this distinction or otherwise tie it to the text of Title VII, and at least one other court in this district has suggested that the *Chambers* discussion applies both to formal position transfers and to forced reassignments of duties. *Williams*, 2021 WL 4476770, at *9 n.15 (noting the *Chambers en banc* grant and observing that while the suit before it "involve[d] a reassignment rather than a transfer, the applicable standards on this issue may soon be in flux"). Indeed, the D.C. Circuit applies the objectively tangible harm standard in both transfer-of-position cases, *Brown*, 199 F.3d at 457, and cases involving changes in job responsibilities, *Forkkio*, 306 F.3d at 1132.

Land Mobile Radio program and marking him as AWOL on January 14, 2019—suffice to plead that he suffered an adverse employment action under both the discrimination and retaliation standards.

*Discrimination.*  The Complaint alleges that Mitchell "was removed from his position as COR for Land Mobile Radio systems," Compl. ¶ 13; it does not tell us what, if any, duties replaced this assignment.  It is at least "plausible," *Iqbal*, 556 U.S at 678 (citation omitted), that being removed from a position responsible for handling contracts relating to a particular BOP program, *see* Compl. ¶¶ 8, 13, would "affect[] future employment opportunities," *Ortiz-Diaz v. U.S. Dep't of Hous. & Urb. Dev., Off. of Inspector Gen.*, 867 F.3d 70, 74 (D.C. Cir. 2017). Moreover, it is reasonable to infer that "remov[al]," Compl. ¶ 13, from such a senior position would leave Mitchell with "significantly different," and less desirable, responsibilities, and that it would have consequences more significant than the exclusion from management meetings and emails held not sufficiently adverse in *Forkkio*.  Mitchell also alleges that he "suffer[ed] lost earnings and earning capacity" because of Defendants' actions.  Compl. ¶ 25; *cf. Chien v. Sullivan*, 313 F. Supp. 3d 1, 14–15 (D.D.C. 2018) (holding that the plaintiff had plausibly alleged that she suffered materially adverse consequences based on denials of temporary duty assignments in part because she alleged that the denials "result[ed] in a loss of monetary benefits") (alteration in original).

The January 14 designation of Mitchell as AWOL, too, is a plausible allegation of an adverse employment action.  This allegedly undeserved designation deprived Mitchell of eight hours of pay.  Compl. ¶ 17.  Defendants do not argue that this action was not materially adverse, and they are right not to do so: "a diminution in pay or benefits can suffice even when the employer later provides back pay."  *Greer v. Paulson*, 505 F.3d 1306, 1317 (D.C. Cir. 2007)

(holding that an AWOL designation was an adverse employment action).  The AWOL designation took money out of Mitchell's paycheck, Compl. ¶ 32, thereby causing him "objectively tangible harm," *Forkkio*, 306 F.3d at 1131.  Though he may not have lost an especially large sum, Mitchell has plausibly pleaded the material adverse action element of his discrimination claim.  *See Yazzie v. Nat'l Org. for Women*, No. CV 19-3845, 2021 WL 1209347, at *10 (D.D.C. Mar. 30, 2021) ("[A]t the motion to dismiss stage, the plaintiff need not detail exactly how she will prove her case at trial or even what evidence she will offer to fend off a motion for summary judgment.").

   *Retaliation*.  For largely the same reasons, Mitchell's allegations about his removal as the COR for Land Mobile Radio and his January 14 AWOL designation sufficiently plead the adverse action element of his retaliation claim.  *See* Compl. ¶ 32 (invoking both of these setbacks as bases for the retaliation claim).  Each of these could plausibly have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 68 (citation omitted and cleaned up); *cf. Behrens v. Tillerson*, 264 F. Supp. 3d 273, 279–80 (D.D.C. 2017) (denying motion to dismiss retaliation claim because the compliant "plausibly suggest[ed] that [the plaintiff], in essence, was relegated to lower-rung responsibilities than what she was entitled to pursuant to the terms of her job description" and noting that the merit of the defendant's argument that the plaintiff "was merely dissatisfied with the legitimate work allotments made by her supervisors" would have to "be decided following discovery"); *Craig v. District of Columbia*, 881 F. Supp. 2d 26, 34 (D.D.C. 2012) (holding that an allegation that a police officer's reassignment to a region that was less desirable, in part because it was further from her home, was sufficient to plead an adverse action for a retaliation claim and emphasizing that "[w]hether or not the defendants' acts will ultimately give rise to liability is a fact-sensitive

question that should be reserved for a later stage of the litigation."); *Taylor v. Solis*, 571 F.3d 1313, 1321 (D.C. Cir. 2009) (noting that a temporary AWOL designation supported a retaliation claim because "the temporary deprivation of wages counts as a materially adverse action"); *Chien*, 313 F. Supp. 3d at 16 (holding that it was plausible that placing a plaintiff "on AWOL status after retroactively changing her work hours and authorizing her pay to be deducted for [nine] hours that were pre-approved for sick leave . . . could have dissuaded a reasonable worker from making a charge of discrimination").

### 2. Mitchell Plausibly Alleges Causation for His Retaliation Claim

In addition to arguing that Mitchell's Complaint does not plausibly allege an adverse action, Defendants contend that it falls short of pleading a second element of the retaliation claim, a causal link between Mitchell's protected activity and the adverse employment actions he suffered.  Mem. at 14.  One way to show causation is to demonstrate "temporal proximity between an employer's knowledge of protected activity and an adverse employment action," *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (per curiam), and both parties direct their arguments to this method of pleading causation, Mem. at 14; Opp'n at 15.  For temporal proximity to give rise to a causal inference, the protected activity and the adverse action must be "very close" in time.  *Clark Cnty. Sch. Dist.*, 532 U.S. at 273 (citation omitted).

Just how close remains something of an open question.  Some courts in this district have suggested that periods as longs four months might permit an inference of causation, *see Badwal v. Bd. of Trustees of Univ. of D.C.*, 139 F. Supp. 3d 295, 318–19 (D.D.C. 2015) ("In this Circuit, the alleged retaliatory acts must have occurred within three or four months of the protected activity to establish causation by temporal proximity"), while others have indicated that gaps as short as two months do not, *see Jones v. D.C. Water & Sewer Auth.*, 922 F. Supp. 2d 37, 42

(D.D.C. 2013) ("Although neither the Supreme Court nor the D.C. Circuit has established a bright-line three-month rule, this Circuit has generally found that a two- or three-month gap between the protected activity and the adverse employment action does not establish the temporal proximity needed to prove causation." (cleaned up) (citing *Hamilton v. Geithner*, 666 F.3d 1344, 1357–58 (D.C. Cir. 2012) and *Taylor*, 571 F.3d at 1322 (D.C. Cir. 2009))).

Both the facts of the particular case and the stage of the litigation seem to affect the answer.  At the summary judgment stage, courts have expressly held that periods of five months and greater cannot establish causation.  *Tressler v. Nat'l R.R. Passenger Corp*., 09-CV-2027, 2012 WL 5990035, at *11 (D.D.C. Nov. 30, 2012) (five months); *Drielak v. Pruitt*, 890 F.3d 297, 300–01 (D.C. Cir. 2018) (six months); *see also Taylor*, 571 F.3d at 1322 (holding that a two and one-half month period was insufficient "on the record here").  However, at the motion-to-dismiss stage, some courts have been more permissive.  *See Holodnak v. Serv. Emps. Int'l Union*, No. CV 20-3250, 2021 WL 5578675, at *5 (D.D.C. Nov. 30, 2021) ("Given that there is at least some support in the case law for a four-month gap, dismissing the [Family and Medical Leave Act] retaliation claim is not justified at this time."); *Haile-Iyanu v. Cent. Parking Sys. of Va., Inc.*, No. CIV.A.06 2171, 2007 WL 1954325, at *5 (D.D.C. July 5, 2007) (eleven-month gap between medical leave and termination plausibly alleged causation in a Family and Medical Leave Act retaliation case).

Whatever the precise outer bound of a permissible temporal proximity inference at the Rule 12(b)(6) stage, Mitchell's Complaint plausibly pleads causation based on the temporal proximity between some of his protected activities and BOP's adverse actions combined with his alleged general pattern of retaliatory conduct.  "Prior to August of 2018," Mitchell allegedly complained to Rangel about his "continued abusive and harassing behavior" and informed him

that he intended to file a formal complaint with BOP's Equal Employment Opportunity office.[5]
Compl. ¶ 12. The Complaint does not tell us exactly when "[p]rior to August" Mitchell warned
Rangel that he would be filing with the EEO. But construing this allegation liberally, it is
reasonable to infer that he would not have issued his warning all that far in advance of his actual
filing of the EEO complaint in September. *See* Compl. ¶ 31. Thus, it is reasonable to infer that
his removal as the COR for Land Mobile Radio at Rangel's direction on August 16, Comp. ¶ 13,
came "very soon" after he alerted Rangel of his plan to contact the EEO. *Clark Cnty. Sch. Dist.*,
532 U.S. at 273 (citation omitted).

Though a lengthier period passed between Mitchell's protected activities and the AWOL
designation, the Complaint still gives rise to a reasonable inference of causation regarding this
alleged act of retaliation. Mitchell filed a complaint with the EEOC on September 26, 2018.
Compl. ¶ 5. Just over three-and-a-half months later, on January 14, Ideo marked Mitchell
AWOL. *Id.* ¶ 13. Importantly, construed liberally, Mitchell's Complaint need "not rely on

---

[5] Defendants do not suggest that this, or any of Mitchell's other alleged protected actions,
were not activities protected by Title VII's anti-retaliation provision. *See* 42 U.S.C. § 2000e-3(a)
(making it illegal for any employer to retaliate against an employee "because he has opposed any
practice made an unlawful employment practice by [Title VII], or because he has made a charge,
testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under
[Title VII]"). In any case, "Title VII's protections are not limited to individuals who file formal
complaints, but extend to those who voice informal complaints as well." *Furcron v. Mail Ctrs.
Plus, LLC*, 843 F.3d 1295, 1311 (11th Cir. 2016). The Court does not address whether
Mitchell's alleged August 2018 complaint about a sexual relationship between Rangel and Ideo
related to an unlawful employment practice under Title VII. *See Belov v. World Wildlife Fund,
Inc.*, No. CV 21-1529, 2021 WL 4773236, at *5 (D.D.C. Oct. 13, 2021) ("Not every complaint
entitles its author to protection from retaliation under Title VII . . . because the plaintiff must
demonstrate that he complained to the employer of some unlawful discrimination *based on his
membership in a protected class*." (citation omitted and cleaned up) (emphasis in original)); *Poff
v. Oklahoma ex rel. Oklahoma Dep't of Mental Health & Substance Abuse Servs.*, 683 F. App'x
691, 703 (10th Cir. 2017) (holding that a plaintiff could not state a Title VII retaliation claim
because she alleged "no facts that would raise an inference that her opposition was related to
anything more than the bare existence of a consensual sexual relationship, which is not
prohibited conduct under Title VII").

temporal proximity alone to support" an inference of causation.  *See Yazzie*, 2021 WL 1209347 at \*15.  Mitchell alleges "a series of protected activities and reprisals over a period of many months," *id.*: Rangel told Mitchell he wished to remove him as the COR for Land Mobile Radio, then Mitchell complained to the BOP's Ombudsman about Rangel's disrespectful and belittling treatment, then Mitchell told Rangel he would file with the EEOC, then Rangel directed Mitchell's removal as the COR for Land Mobile Radio, then Mitchell filed with the EEOC, then Ideo marked him AWOL, and then Ideo attempted to mark Mitchell AWOL a second time even though he had notified her in advance that he would be taking sick leave to attend an appointment.  Compl. ¶¶ 5, 9–13, 17, 19.  Drawing all reasonable inferences in Mitchell's favor, this series of repeated alleged complaints and reprisals, together with the three-and-a-half-month period between the EEOC complaint and the initial AWOL designation, is sufficient to plead causation.  *See Hamilton v. Geithner*, 666 F.3d 1344, 1357–58 (D.C. Cir. 2012) (emphasizing that "the specific facts of each case," rather than bright-line time-elapsed rules, must "determine whether inferring causation is appropriate"); *cf. Yazzie*, 2021 WL 1209347 at \*14–15 (holding that in light of an alleged "series of protected activities and reprisals over a period of many months, during which time [plaintiff] was progressively isolated from coworkers and subordinates, stripped of authority and power, and ultimately fired," gaps of "two months or more" between some of the protected activities and retaliatory acts did not defeat a retaliation claim under 42 U.S.C. § 1981 (internal quotation marks omitted)).

In their motion to dismiss, Defendants challenge only the adverse action and causation elements of Mitchell's Title VII claims.  Because Mitchell has plausibly alleged the adverse action elements of his discrimination and retaliation claims and the causation element of his

retaliation claim, the Court denies Defendants' motion to dismiss the discrimination and retaliation claims against Garland.

## B. Adjudication of Defendants' Motion for Summary Judgment is Premature Because Mitchell Has Shown That He Needs to Take Discovery

As Defendants appear to acknowledge, their remaining set of arguments—that the BOP had legitimate, non-discriminatory, and non-retaliatory reasons for the COR reassignment and the AWOL designation—relies on a legal framework that involves consideration of evidence and is appropriate only at the summary judgment stage. Mem. at 16–19 (relying on the "burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)" and citing record evidence not incorporated or referenced in the Complaint); *see Easaw v. Newport*, 253 F. Supp. 3d 22, 26 (D.D.C. 2017) (noting that the *McDonnell Douglas* framework "generally applies at summary judgment").

"[A] party may file a motion for summary judgment at any time until 30 days after the close of all discovery." Fed R. Civ. P. 56(b). However, if "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may" deny the motion and allow time to take discovery. Fed. R. Civ. P. 56(d). The D.C. Circuit has held that to obtain Rule 56(d) relief, a party defending against summary judgment must "(1) outline the particular facts . . . [it] intends to discover and describe why those facts are necessary to the litigation; (2) explain why the party could not produce those facts in opposition to the pending summary-judgment motion; and (3) show that the information is in fact discoverable." *Jeffries v. Barr*, 965 F.3d 843, 855 (D.C. Cir. 2020) (cleaned up) (citing *Convertino v. U.S. Dep't of Just.*, 684 F.3d 93, 102 (D.C. Cir. 2012)).

Defendants moved for summary judgment before either party had the opportunity to take discovery in this case. In response to Defendants' summary judgment motion, Mitchell moved

for Rule 56(d) relief and filed an affidavit explaining that summary judgment was premature because he needed discovery on several topics. *See* Aff. of Rodrick L. Mitchell, ECF No. 18-2 ("Rule 56(d) Aff."). Defendants claim that this affidavit does not comply with the first and second *Convertino* elements, but the Court disagrees and holds that Mitchell is entitled to Rule 56(d) relief. Defs.' Reply Supp. Mot. Dismiss or for Summ. J. at 14–18, ECF No. 21 ("Reply"). Therefore, the Court will deny Defendants' motion for summary judgment without prejudice to the filing of a new summary judgment motion after all parties have had sufficient opportunity to take discovery.

The D.C. Circuit elaborated on the first *Convertino* element in *Haynes v. D.C. Water & Sewer Authority*:

> [The first element requires the party seeking Rule 56(d) relief] to file an affidavit or declaration explaining, with sufficient particularity, what specific facts are required to oppose the motion and why those facts are necessary to the litigation. What counts as "sufficient particularity" will necessarily be a case-specific inquiry, dependent on the nature of the claims and the existing record. But the affidavits we have approved of in prior cases have two things in common. First, they discuss the specific facts that must be discovered to support a plaintiff's legal theory, rather than recite broad categories of information—even if broad categories of information will ultimately be requested to uncover those specific facts. Second, they explain why the required information *could* create a dispute of material fact, even when its ultimate import is unclear, and connect the information sought to the theory of relief advanced.

924 F.3d 519, 532 (D.C. Cir. 2019) (emphasis in original). Three of the discovery requests in Mitchell's affidavit meet this standard. These also meet the second *Convertino* element, for they each relate to information within Defendants' possession that Mitchell could not produce without discovery.[6]

---

[6] Mitchell did have the opportunity to receive at least some interrogatory and document discovery during his administrative proceeding before the EEOC, and BOP made a 2348-page production. Reply Ex. B, ECF No. 21-3. However, the record is murky on whether the administrative discovery is coextensive with the discovery Mitchell needs in order to oppose summary judgment in this Court. Moreover, Defendants do not cite any authority for their

*First*, Mitchell explains that he needs to present facts to prove that his salary and "working conditions" changed when he was moved from the Land Mobile Radio program to the Private Branch Program, "factors that are important in supporting the fact that [he] suffered adverse job actions concerning [his] retaliation claim." Rule 56(d) Aff. ¶ 7. As the Court has explained, in order to succeed on both his Title VII discrimination claim and his Title VII retaliation claim, Mitchell will have to prove that he suffered an "adverse action" at the hands of his employer, an inquiry that turns in part on whether his reassignment from Land Mobile Radio to the Private Branch program left him with "significantly different" responsibilities. *See Forkkio*, 306 F.3d at 1131 (citation omitted). To be sure, as Defendants point out, Mitchell should not need discovery in order to learn about any changes in his own salary. Reply at 17. But his request is not limited to salary information; he also claims that Defendants have documents relevant to the "working conditions" at Land Mobile Radio and at the Private Branch program. Rule 56(d) Aff. ¶ 7. These documents "*could* create a dispute of material fact" on the adverse action elements of Mitchell's discrimination and retaliation claims, *Haynes*, 924 F.3d at 532 (emphasis in original), for example, by showing that Mitchell did not hold the same "substantive and supervisory responsibilities he had before" the reassignment, *Ramos v. Garland*, No. CV 13-0328, 2021 WL 1345865, at *11 (D.D.C. Apr. 9, 2021) (quoting *Forkkio v. Tanoue*, 131 F. Supp. 2d 36, 40 (D.D.C. 2001), *aff'd*, *Forkkio*, 306 F.3d 1127). Defendants have not offered any evidence to show that Mitchell's responsibilities remained substantially similar. *Cf. Smith v. United States*, 843 F.3d 509, 513 (D.C. Cir. 2016) (holding that a party was not entitled to Rule 56(d) relief because the information it sought could not create a genuine dispute

---

suggestion that discovery taken in an administrative proceeding or investigation necessarily renders federal-court discovery unnecessary. Reply at 16.

of material fact in light of other "undisputed facts" found in the record).  Mitchell might be able to testify about any change in responsibilities based on his own perceptions, but he is entitled to attempt a stronger case by seeking formal duty descriptions or evidence of how the BOP treats the two roles for advancement purposes.

*Second*, Mitchell points to Laurence Faytaren and Dustin Martin, two non-African-American BOP employees who joined Mitchell at the Puerto Rico dinner with Motorola but were not disciplined in the same manner he was.  Rule 56(d) Aff. ¶ 5.  Mitchell explains that he wants to "present facts to prove that [he] was treated differently than Mr. Faytaren and Mr. Martin in [his] removal from the Land Mobile Radio program due to [his] race."  *Id.*  Mitchell avers that:

> Defendants possess documents containing factual information regarding [his] removal and the disciplinary action Mr. Faytaren and Mr. Martin suffered that would support [his] claim.  Numerous employees of Defendants also possess information regarding [his] removal from the Land Mobile Radio program and the disciplinary action Mr. Faytaren and Mr. Martin suffered that would support [his] claim.

*Id.*; *see also* Opp'n at 3 ("Plaintiff should be entitled to discovery to attack the veracity of Defendants' contention that Plaintiff was re-assigned merely because of his alleged violation of Defendants' policy and the disciplinary action taken against Mr. Faytaren and Mr. Martin for engaging in the same allegedly improper conduct as Plaintiff."); *id.* at 12 ("[N]either [Faytaren nor Martin] appear to have been removed from the LMR program as Plaintiff was, despite engaging in the same inappropriate conduct.").[7]

Evidence about disparate punishment of Mitchell relative to Faytaren and Martin could certainly create a genuine dispute of material fact.  *See Haynes*, 924 F.3d at 532.  Under the *McDonnell-Douglas* framework, because Defendants have identified a facially legitimate, non-

---

[7] Courts "regularly look[] beyond a litigant's declaration to his briefing in analyzing whether the *Convertino* elements have been satisfied."  *Jeffries*, 865 F.3d at 855.

discriminatory and non-retaliatory reason for the COR reassignment—the ethical issues the

Puerto Rico dinner presented—Mitchell must produce evidence sufficient to permit a reasonable

juror to conclude that the Puerto Rico dinner was not the actual reason for his reassignment (or

that, even if it was, he received a disparate punishment because of his race).  *See Walker v.

Johnson*, 798 F.3d 1085, 1092 (D.C. Cir. 2015).  One way Mitchell could meet this summary-

judgment burden is to show that BOP's "stated reasons were pretextual" by "citing [BOP's]

better treatment of similarly situated employees outside [his] protected group."  *Id.*  Evidence

about Faytaren's and Martin's Puerto Rico punishments could therefore be crucial to Mitchell's

case.  His Rule 56(d) affidavit does far more than, as Defendants suggest, "merely invok[e] the

term 'comparators.'"  Reply at 15.  It establishes the need for information about specific

comparators who allegedly received a lesser sanction for a similar offense.  *See Cruz*, 931 F.3d

1186 at 1192 (reversing denial of a Rule 56(d) request for discovery related to lenient treatment

of comparators because "evidence that white employees, or male employees, were disciplined

less severely for the sort of behavior for which [the plaintiff] was disciplined could create a

dispute of material fact about whether [the employer's] justification was a pretext for

discrimination.").

 Defendants put the cart before the horse when they argue that evidence regarding

Faytaren and Martin is not material because they are not, as a matter of law, similarly situated to

Mitchell.  Reply at 10, 17.  To support this point, Defendants attempt to show *via record

evidence* that Faytaren's and Martin's positions in the Land Mobile Radio program were

different from Mitchell's and that their Puerto Rico punishment was determined by officials

different than those who decided how to treat Mitchell.  *Id.* at 10–11 (citing affidavits from

Faytaren and Martin).  But the question relevant to Mitchell's Rule 56(d) motion is whether it is

yet appropriate to reach the summary-judgment stage and consider this sort of record evidence. Because Mitchell has shown a need for discovery, it is not.  Defendants' evidence-based argument may ultimately carry the day, but its adjudication must wait for a fully developed factual record.  *Cf. Montgomery v. Omnisec Int'l Sec. Servs., Inc.*, 961 F. Supp. 2d 178, 183–84 (D.D.C. 2013) (holding it inappropriate to require a high level of specificity regarding comparators at the motion-to-dismiss stage as opposed to the summary-judgment stage).

Moreover, the D.C. Circuit has described similarity of job duties and whether the plaintiff and comparators share the same supervisor not as necessary conditions for comparator relevance, but rather as "[f]actors that bear on whether someone is an appropriate comparator."  *Wheeler v. Georgetown Univ. Hosp.*, 812 F.3d 1109, 1115 (D.C. Cir. 2016); *see also id.* at 1118 (the "same supervisor criterion" is not an "inflexible requirement") (quoting *Louzon v. Ford Motor Co.*, 718 F.3d 556, 563–64 (6th Cir. 2013)).  And though Defendants' evidence does seem to establish that there were some differences between Faytaren and Martin's duties and Mitchell's, it falls short of establishing that their duties differed in a way that necessarily would have justified a disparate penalty for the Puerto Rico dinner.  Reply at 11 (noting that neither Faytaren nor Martin was the COR for Land Mobile Radio and that Martin was not assigned to the evaluation panel for the ongoing bid solicitation); *see Banks v. District of Columbia*, 498 F. Supp. 2d 228, 234–35 (D.D.C. 2007) (the comparator need not "be identical" to the plaintiff so long as she has "similar employment responsibilities").  At least on this underdeveloped record, Defendants have not established that Faytaren and Martin cannot be appropriate comparators as a matter of law.  *See Wheeler*, 812 F.3d at 1116 ("[D]etermining whether two employees are similarly situated is ordinarily a question of fact for the jury.").

22

*Third*, Mitchell requests discovery to show that the policy behind Defendants' asserted legitimate reason for marking him AWOL on January 14—which required employees to request leave in advance, rather than on the day of the desired leave, *see* SUMF at 5–6—was inconsistently enforced.  Mitchell contends that despite this policy, he and other BOP employees "were able to take leave before putting in their request for leave."  Rule 56(d) Aff. ¶ 8.  If true, such inconsistency could help establish pretext.  *Walker*, 798 F.3d at 1092 (noting that a plaintiff may support an inference of pretext "by citing the employer's . . . inconsistent or dishonest explanations [or] its deviation from established procedures or criteria").  Mitchell wishes to obtain documents that Defendants allegedly possess regarding "acceptable leave requests," as well as information from other employees pertaining to leave requests.  Rule 56(d) Aff. ¶ 8.  Similarly, he claims that Defendants and their employees possess documents regarding whether Ideo's decision to mark Mitchell AWOL was "appropriate[]."  *Id.* ¶ 11.  It is "self-evident," *cf. Ikossi v. Dep't of Navy*, 516 F.3d 1037, 1045 (D.C. Cir. 2008), that without discovery, Mitchell cannot access the kind of system-wide documents necessary to reveal whether BOP enforced its advance-notification policy generally or only selectively.[8]

Of course, some items within Mitchell's affidavit do not even relate to a need for discovery, and others might be too general to support a Rule 56(d) motion on their own.  Rule 56(d) Aff. ¶ 12 ("I retired from working at the Federal Bureau of Prisons on December 31, 2019. I retired because I felt dejected and did not feel like a valued employee."); *id.* ¶ 6 ("Because I have not yet had the opportunity to engage in discovery, I cannot present facts to prove that I was treated differently in my removal from the Land Mobile Radio program due to my race, an

---

[8] The fact that BOP had to reiterate the rule so frequently in communications to employees leads one to question whether employees regularly ignored the rule.

important element in my claim for race discrimination.  Defendants possess documents

containing factual information regarding the reasons for my removal from the Land Mobile

Radio program that would support my claim.  Numerous employees of Defendants also possess

information regarding my removal from the Land Mobile Radio program that would support my

claim.").  But Mitchell has established a need for discovery regarding whether his transfer from

the Land Mobile Radio program to the Private Branch program significantly altered his duties

and career prospects; the nature of the BOP's treatment of other employees who attended the

dinner with Motorola in Puerto Rico; and whether the BOP actually enforced its stated policy of

requiring leave requests in advance.[9]  The facts adduced by both sides during discovery may well

reveal that Defendants had legitimate, non-discriminatory, non-retaliatory reasons for

reassigning Mitchell away from Land Mobile Radio and for marking him AWOL—the Court

expresses no view on the matter.  The dispositive point at this stage is that Mitchell has

demonstrated a need to take discovery and fully develop the record on this issue.  The Court

grants Mitchell's motion for Rule 56(d) relief and denies Defendants' motion for summary

judgment as premature.  Attorney General Garland may bring another summary-judgment

motion, if he wishes, after the parties have had a sufficient opportunity to take discovery.

## V.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, Or, In the Alternative, for

Summary Judgment (ECF No. 13) is **GRANTED IN PART AND DENIED IN PART**.

Plaintiff's Motion for Relief Pursuant to Fed. R. Civ. P. 56(d) (ECF Nos. 18, 19) is **GRANTED**.

An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

---

[9] The Court does not mean to suggest that discovery will be limited to these topics.

Dated:  03/09/2022

RUDOLPH CONTRERAS
United States District Judge